1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

10  ANDREW GOLDBERGER,                      Case No.: 2:16-cv-1884-RFB-NJK

11          Plaintiff(s),                   **REPORT AND RECOMMENDATION**

12  v.                                      (Docket No. 50)

13  SMARTCAREOS, LLC, et al.,

14          Defendant.

15

16          Pending before the Court is Defendants' motion to enforce the settlement agreement.

17  Docket No. 50.  The Court has considered Defendants' motion, Plaintiff's response, and

18  Defendants' reply.  Docket Nos. 50, 53, 55.  The Court finds the motion properly resolved without

19  a hearing.  *See* Local Rule 78-1.

20  **I.    BACKGROUND**

21          The instant case involves an alleged breach of employment contract.  *See generally*, Docket

22  No. 1.  On December 15, 2017, Plaintiff and Defendants SmartCare OS, LLC ("SmartCare") and

23  Smart Tuition Holdings, LLC ("Smart Tuition") entered into a settlement agreement.  Docket Nos.

24  50 at 3, 50-3 at 9.  Payment of settlement funds was conditioned upon, *inter alia*: (1) Plaintiff

25  signing the settlement agreement and returning it to Defendants' counsel no later than December

26  15, 2017; (2) Plaintiff signing the redemption and unit assignment agreements and returning each

27  to Defendants' counsel; (3) Plaintiff, Defendant Smart Tuition, and the escrow agent TMF

28  executing "an escrow agreement in a form acceptable to [Defendants];" (4) Plaintiff stipulating to

dismiss with prejudice Defendant Lyrical Partners, L.P. ("Lyrical") as a party; and (5) Plaintiff stipulating to dismiss the instant action with prejudice.  Docket No. 50-3 at 3-5.

On February 1, 2018, Defendants emailed Plaintiff to inquire about the status of the escrow agreement.  Docket No. 50-4 at 4.  Later that day, Plaintiff notified Defendants that it was his position that the settlement agreement was "void due to the lack of good faith on the part of [Defendants] to rectify" issues related to the finalization of the escrow agreement.  Docket No. 50-4 at 3.  Plaintiff alleged that Defendants made "dozens of changes, many of which are material," to the escrow agreement and did not accept material terms "like assignability" within 45 days.  *Id.* Plaintiff also alleged that he "recently learned of his inability to comply with [the settlement] agreement by his divorce counsel because of a preliminary injunction filed in the District Court of Clark County, Nevada, Family Division, dated March 10, 2016," which voided the settlement agreement without his spouse's written consent or the court's permission.  Docket No. 50-4 at 3-4.  After the parties conferred over Plaintiff's refusal to comply with the settlement agreement, Defendants filed the instant motion, alleging that Plaintiff failed to abide by his obligation under the settlement agreement to file the stipulation to dismiss Defendant Lyrical as a party, with prejudice, and to dismiss the instant case with prejudice.  *See generally*, Docket No. 50.

## II.    STANDARDS

### A.    Enforcing Settlement Agreements

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it.  *See In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  A settlement agreement is a contract and, therefore, its "construction and enforcement are governed by principles of local law," even where the underlying cause of action is federal.  *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (citations omitted).  In Nevada, because a settlement agreement is a contract, "its construction and enforcement are governed by principles of contract law."  *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  Therefore, the basic principles of contract law apply: offer and acceptance, meeting of the minds, and consideration.  *Id.*  Preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms.  *Id.* ("A valid

contract cannot exist when material terms are lacking or are insufficiently certain and definite" for a court "to ascertain what is required of the respective parties"). A court may not compel compliance with a settlement agreement "when material terms remain uncertain." *Id.*

When material facts are disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890. The Court has discretion to hold an evidentiary hearing if neither party requests one or indicates that a hearing is necessary to settle disputed material facts. *Bank of the W. v. Great Falls Ltd. P'ship*, 2011 U.S. Dist. LEXIS 123790, at *2 (D. Nev. Oct. 25, 2011).

B.    Fraudulent Inducement

The Court may set aside a settlement agreement that was entered into by fraud, duress, or lack of informed consent. *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 848 (9th Cir. 2004). Whether the settlement agreement was fraudulently entered into can be determined by State law or Fed.R.Civ.P. 60(b).[1] *See Hissung v. Aranas*, 2016 U.S. Dist. LEXIS 129751, at *11 (D. Nev. Aug. 30, 2016).

To demonstrate fraudulent inducement under Nevada law, a plaintiff must prove by clear and convincing evidence each of the following: (1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the representation was false (or, alternatively, that the defendant had an insufficient basis for making the representation); (3) the defendant's intention to induce the plaintiff to consent to the agreement; (4) the plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from his or her reliance. *See J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004); *see also Martinez v. Usaa Fed. Sav. Bank*, 683 Fed. Appx. 584, 585 (9th Cir. 2017).

C.    Time is of the Essence Clauses

"A fundamental principle of contract law is that the time for performance under a contract is not considered of the essence unless the contract expressly so provides or the circumstances of

---

[1] Under Fed.R.Civ.P. 60(b), "the Court may relieve a party … from a final judgment, order, or proceeding for … fraud, misrepresentation, or misconduct by an opposing party." As the settlement agreement in the instant case is neither a final judgment, order, nor proceeding, Fed.R.Civ.P. 60(b) is inapplicable.

the contract so imply." *Mayfield v. Koroghli*, 184 P.3d 362, 366 (Nev. 2008).  If neither party performs under the contract by the date provided in the contract, "the duties of both parties are discharged ..." *Land Am. Lawyers Title v. Metro. Land Dev., LLC*, 2006 U.S. Dist. LEXIS 58129, at *20-21 (Nev. 2006) (citing *Goldston v. AMI Investments, Inc.*, 655 P.2d 521, 523 (Nev. 1982)). "If time is not of the essence, the parties generally must perform under the contract within a reasonable time, which depends upon the nature of the contract and the particular circumstances involved." *Mayfield*, 184 P.3d at 366 (citation omitted).  Therefore, determining whether performance was completed within a reasonable time is a question of fact.  *See Vanbuskirk v. Nakammura*, 2016 Nev. LEXIS 465, at *4 (Nev. 2016) (citing *Mayfield*, 184 P.3d at 364).  In its determination, the Court may consider the time spent on formulating the contract, whether one party subsequent to the formation of the contract demanded performance by a certain time by providing notice and intention to abandon the contract, and the parties' behavior and representations. *See Mayfield*, 184 P.3d at 366-367.

D.    Condition Precedent

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Halpern v. Tharaldson*, 2017 U.S. Dist. LEXIS 41307, at *12 (Nev. 2017) (citation omitted). Although conditions precedent are not favored, the Court does not contradict the language of a contract.  *Chevron U.S.A. Inc. v. Sheikhpour*, 469 Fed. Appx. 593, 596 (9th Cir. 2012); *see also Camino Props. LLC v. Ins. Co. of the West*, 2015 U.S. Dist. LEXIS 62166, at *13-15 (D. Nev. May 12, 2015) (interpreting contractual promises as conditions to another party's performance "if it is clear that this is what the parties intended").

Moreover, a party has the duty not to delay, hinder, or prevent the fulfillment of a condition precedent by another party.  *See George v. Morton*, 2017 U.S. Dist. LEXIS 15932, at *22 (D. Nev. Mar. 1, 2007) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991).  When a party's conduct prevents the fulfillment of a condition precedent, that party cannot take advantage of the lack of fulfillment and refuse to complete its obligations under the contract. *See e.g.*, *Lilly v. Envoy, LLC*, 2016 U.S. Dist. LEXIS 176039, at *20-24 (W.D. Wash. Dec. 20,

2016) (citing 3A CORBIN, *Corbin on Contracts* § 767); *see also* 8-40 CORBIN, *Corbin on Contracts* §§ 40.17, 40.19.   This is known as the prevention doctrine.   *See e.g.*, *id.*   Indeed, Courts may consider such conduct as a breach of contract and excuse the party that is subject to the condition from performance.   *See FNBN RESCON I, LLC v. Citrus El Dorado, LLC*, 2018 U.S. App. LEXIS 2576, at \*6 (9th Cir. 2018) ("Under California law, if one contracting party prevents the other from performing a condition precedent, the party that is subject to the condition is excused from performing it);[2] *see also Lilly*, 2016 U.S. Dist. LEXIS 176039, at \*20-24; *Mann v. Glens Falls Ins. Co.*, 418 F. Supp. 237, (D. Nev. 1974) (citing 3 CORBIN, *Corbin on Contracts* § 571) (*rev'd on other grounds by Mann v. Glens Falls Ins. Co.*, 541 F.2d 819 (9th Cir. 1976)); 10-53 CORBIN, *Corbin on Contracts* § 53.5 (defining the prevention doctrine as requiring "a promisor to reasonably facilitate the occurrence of a condition precedent by either refraining from conduct which would prevent or hinder the occurrence of the condition, or by taking positive steps to cause its occurrence").

III.   **ANALYSIS**

A.   Evidentiary Hearing

Defendants request an evidentiary hearing.   Docket No. 50.   Here, the material terms are clearly articulated in the settlement agreement and are not disputed by the parties.   Docket No. 50-3.   Therefore, the Court finds that an evidentiary hearing is not appropriate.

B.   The Escrow Agreement

Defendants submit generally that the parties entered into a duly executed settlement agreement on December 15, 2017, after substantial negotiation with Plaintiff and his counsel and numerous revisions to the settlement agreement.   Docket No. 50 at 2-3.   Defendants further submit that Plaintiff refuses to file a stipulation to dismiss the instant action with prejudice and to dismiss with prejudice Defendant Lyrical, therefore, failing to abide by his obligations under the settlement agreement.   Docket No. 50 at 2-3.

---

[2] "Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004) (citing *Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996).

1    In response, Plaintiff submits that the settlement agreement is unenforceable because the
2    condition precedent of executing the escrow agreement failed.  Docket No. 53 at 2, 5.  Plaintiff
3    further submits that the condition precedent failed because time was of the essence to execute the
4    escrow agreement and Defendants "dragg[ed] out" the process by "repeatedly requesting changes
5    to the standard form," which "fundamentally altered the nature of the settlement in a way not
6    contemplated by the parties …"  *Id.*

7        In reply, Defendants submit that time was not of the essence to execute the escrow
8    agreement.  Docket No. 55 at 6.  Defendants further submit that the settlement agreement explicitly
9    stated that the terms of the escrow agreement must be "in a form acceptable to [Defendants]," and,
10   therefore, that Plaintiff is "the only party who could violate the [settlement] Agreement's terms by
11   objecting to the form of the Escrow Agreement …"  Docket No. 55 at 6-7; *see also* Docket No.
12   50-3 at 3.   Additionally, Defendants submit that any failure in executing the escrow agreement
13   and, therefore, fulfilling the condition precedent, was due to Plaintiff's delay, evidenced by the
14   fact that they repeatedly contacted him regarding his approval.  *Id.*; *see also* Docket No. 55-4 at 2.

15            *i.    Time is of the Essence*

16       The settlement agreement reads in pertinent part that, "… [Defendants] agree … to permit
17   [Plaintiff] to transfer the Escrow Account to TMF provided that … [Plaintiff], [Defendant] Smart
18   Tuition and TMF execute an escrow agreement in a form acceptable to [Defendants]."  Docket
19   No. 50-3 at 3.  Although Plaintiff submits that time was of the essence to execute the settlement
20   agreement, he fails to indicate any such language.[3]  Docket No. 53 at 5.

21       Because the settlement agreement did not expressly state that time was of the essence to
22   execute the escrow agreement, the Court analyzes whether the escrow agreement was executed

23   _____
24   [3] The settlement agreement contains various deadlines, none of which support Plaintiff's
     argument.  Docket No. 50-3 at 3-5.  First, Plaintiff had to sign and return the settlement agreement
25   by December 15, 2017.  *Id.*  Second, Plaintiff had to file the stipulation to dismiss the instant action
     with prejudice and dismiss with prejudice Defendant Lyrical, five days after he signed the
26   settlement agreement.  *Id.*  Third, Defendants would "tender the Consideration" of the settlement
     agreement five days after Plaintiff fulfilled all the condition precedents.  *Id.*  Plaintiff submits that
27   he has not "received any of the other bargained-for benefits that the [settlement] Agreement
     conferred upon" him.  Docket No. 53-1 at 5.  This submission is disingenuous at best, given the
28   clarity of the settlement agreement, which states that Defendants will fulfill their obligations within
     five days after all conditions precedent were fulfilled.  Docket No. 50-3 at 3.

within a reasonable amount of time by looking to the nature and circumstances of the settlement and escrow agreements. *See Mayfield*, 184 P.3d at 366. The escrow agreement would transfer an escrow account under TMF's management to permit Plaintiff to receive certain settlement funds. Docket No. 50-3 at 3. The Court finds that the purpose of this condition precedent was simply to facilitate the transfer of funds through a medium to Plaintiff's benefit, and, therefore, did not require an implied immediacy in completion. The parties submit that settlement negotiations began around the fall of 2017 and continued until February 2018, including the time required to finalize the escrow agreement. Docket Nos. 53 at 2, 55-4 at 2, 55-5 at 2, 56-4 at 2. Over the course of those six months, Plaintiff had the opportunity to demand that a specific time be set to execute the escrow agreement and his intention to abandon the settlement agreement. Plaintiff did not do so. Only after Defendants inquired about Plaintiff's status regarding the escrow agreement did Plaintiff raise the argument that he believed Defendants failed to execute the escrow agreement in a timely manner. Docket No. 50-4.

Moreover, Plaintiff contradictorily disapproves of the fact that the settlement agreement contained various deadlines "to rush" Plaintiff without similar deadlines for Defendants, but also that 45 days to execute the escrow agreement was untimely. Docket No. 53 at 4, 6. Unequal contract terms, such as deadlines for performance of obligations, do not necessarily invalidate a contractual provision or a contract. *Cf. Mao v. Sanum Ivs., Ltd.*, 2014 U.S. Dist. LEXIS 146983, at *6 (D. Nev. Oct. 15, 2014) (holding that unequal contract terms permitting one party to bring suit in one jurisdiction but prohibiting the other party from doing so did not invalidate the forum selection clause) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2003)). Whether Plaintiff considered the completion of one condition as too fast or too slow is an issue that he should have raised during the months of negotiations, not simultaneously with his first indication that he will not comply with a negotiated, executed settlement agreement.

Therefore, based on the nature and circumstances of the settlement and escrow agreements and the parties' behavior and representations, the Court finds that 45 days to review and execute an escrow agreement between three parties is reasonable.

*ii.    Doctrine of Prevention*

Plaintiff attributes the delay in executing the escrow agreement to Defendants making "several substantial and material changes to TMF's standard form escrow agreement," although he fails to discuss the alleged material changes. Docket No. 53 at 2. Defendants submit that they "contacted [Plaintiff's counsel] no less than ten times to follow up on completion of the escrow agreement" and that Plaintiff made certain last minute changes himself, including changing one of the parties to the escrow agreement. Docket Nos. 55-4 at 2; 50-2 at 3. It was not until Defendants initiated a follow-up conversation with Plaintiff on February 2, 2018, that he conveyed for the first time his intent not to comply with the settlement agreement. Docket No. 50-4 at 4. Under the prevention doctrine, a party whose conduct hinders, delays, or prevents the fulfillment of a condition precedent by another party cannot later argue that the failure of the condition precedent voids the contract. *See e.g.*, *FNBN RESCON I, LLC*, 2018 U.S App. LEXIS 2576, at \*6; *see also infra* Section II(D). The Court finds that, although 45 days is a reasonable time in which to review and execute an escrow agreement, any delay in fulfilling this condition precedent is attributable to Plaintiff. Therefore, Plaintiff cannot now raise the failure of the condition precedent in an attempt to void the settlement agreement.

C.    Fraudulent Misrepresentation

Plaintiff argues that the settlement agreement is unenforceable because, he submits, Defendants fraudulently misrepresented that his shares in the company were worthless and that the company had not received any offers to buy it. Docket No. 53 at 6. Plaintiff submits that he learned, subsequent to signing the settlement agreement, that Defendant SmartCare's chairman told investors outside of Plaintiff's presence that the company had received two offers to sell and that the company's shares were valued "at least equal to what the founders had put into the company," along with other statements indicating the company's profitability. Docket No. 53 at 3, 6-7.

In reply, Defendants submit that the statement that Plaintiff's shares were worthless was "a value judgment," and, therefore, a representation of an opinion that is not actionable as a false representation. Docket No. 55 at 3 (internal citations omitted). Defendants further submit that, in

8

1  order for Plaintiff to receive any profits on his shares, the company would have to be sold for at

2  least $12,950,000, and that "[n]either at the time of the [settlement] Agreement (nor subsequently)

3  has SmartCare received an offer to purchase the Company at a price above $12,950,000."[4] *Id.* at

4  3-5.

5      Plaintiff must prove, by clear and convincing evidence, the five elements of fraudulent

6  inducement. *See J.A. Jones Constr. Co.*, 89 P.3d at 1018; *see also Martinez*, 683 Fed. Appx. at

7  585; *see also infra* Section II(B).  Plaintiff submits that he discovered, through an undisclosed

8  recording, that Defendant SmartCare's chairman made various statements to the company's

9  investors indicating general interest in the company's sale and its future growth.  Docket No. 53

10 at 3, 6-7.  Plaintiff concludes that these statements "clearly indicate[] that in the same months when

11 the board was turning down a valid offer that would compensate [Plaintiff] $1.8 million for his

12 shares, Defendants simultaneously offered $0 for the same shares and expressed a value of less

13 than $100,000."  *Id.*  The Court, however, is reluctant to draw the same conclusion, let alone find

14 Plaintiff's evidence to be clear and convincing proof of Defendants' fraudulent misrepresentation.

15 The Court therefore finds that Plaintiff fails to meet his burden to prove that Defendants knowingly

16 made a false representation with the intent to induce him into signing the settlement agreement.

17     Additionally, Plaintiff submits that he relied on Defendants' statements and, had he known

18 the true value of his shares and the company's financial situation, he would not have agreed to the

19 settlement agreement.  Docket No. 53 at 6-7.  An agreement or provision may be found

20 unconscionable or invalidated because of unequal bargaining power between the parties.  *See e.g.*,

21 *Guerra v. Hertz Corp.*, 504 F. Supp.2d 1014, 1021 (D. Nev. 2007).  However, the Court finds that,

22 although Plaintiff does not describe himself as a sophisticated investor (Docket No. 1 at 4), he had

23 at his disposal various tools and avenues to "understand[] [Defendants'] financials" before signing

24 the settlement agreement.  Docket No. 53 at 7.  Plaintiff possessed a high degree of familiarity

25
26     [4] Defendants submit that Plaintiff would receive a valuable return on his shares only if the
    company was purchased for $12,950,000 because the company would first have to "pay liabilities
    totaling approximately $1,950,000."  Docket No. 55 at 4.  The remaining amount would
27  subsequently be paid to investors, except for Plaintiff, who are entitled to priority payouts of their
    total investments as a result of the terms of an investor fundraising in April 2017, in which Plaintiff
28  did not participate.  *Id.*; *see also* Docket No. 55-2.

with the company as its founder and former CEO, was represented by counsel during the months of negotiations of the settlement and escrow agreements, and as a shareholder, had access to a plethora of information to confirm the value of his shares.  Docket No. 53 at 7; 55-2 at 3. Therefore, the Court finds that no unequal bargaining power existed and that Plaintiff did not justifiably rely upon Defendants' statements.  *See Mao*, 2014 U.S. Dist. LEXIS 146983 at *6 (finding no unequal bargaining power between the parties when the settlement agreement "was negotiated at arm's length over a period of months between experienced business persons").

**IV.    CONCLUSION**

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Defendants' motion to enforce the settlement agreement be **GRANTED**.  Docket No. 50.  The undersigned further **RECOMMENDS** that Plaintiff be ordered to stipulate to the dismissal of the instant action with prejudice and to stipulate to dismiss with prejudice Defendant Lyrical.

IT IS SO ORDERED.

Dated: April 20, 2018

_____
Nancy J. Koppe
U.S. Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3-2 <u>any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document</u>. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).